**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **EILEEN GREENE,** *on behalf of herself and all others similarly situated* <br><br> **Plaintiff,** <br><br> v. <br><br> **JEFFERSON CAPITAL SYSTEMS, LLC** <br><br> **Defendant.** | Civ. No. 19-20895 (KM) (ESK) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Eileen Greene initiated this action on behalf of herself and all others similarly situated. Plaintiff asserts that Defendant Jefferson Capital Systems, LLC ("Jefferson Capital") violated the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692 et seq., by engaging in abusive, deceptive, and unfair practices. Jefferson Capital moves to compel arbitration, which, for the reasons provided herein, I will grant.

**I.  Summary**[1]

   **a. Allegations Raised in Ms. Greene's Complaint**

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

   "Compl." = Plaintiff's Class Action Complaint (DE 1)

"Ans." = Defendant's Answer to Plaintiff's Complaint (DE 3)

"Ex. A" = Ex A to the Complaint (DE 1 at 15-19)

"SUMF" = Defendant's Statement of Uncontroverted Material Facts in support of its Motion to Compel Arbitration (DE 16)

1

Ms. Greene is a resident of Essex County, New Jersey and alleges that she is a consumer as defined by 15 U.S.C. § 1692a(3).[2] (Compl. ¶7). Jefferson Capital is a Minnesota Limited Liability Company with its principal place of business located in Minnesota. (Compl. ¶8; Ans. ¶8).

On November 29, 2019, Ms. Greene incurred a debt related to a Premiere Bankcard Mastercard issued by First Premier Bank ("FPB"). (Compl. ¶14; Ans. ¶14). The Complaint alleges that the debt "arose out of a transaction in which money, property, insurance or services," that "were primarily for personal, family or household purposes." (Compl. ¶15). Prior to November 29, 2019, Ms. Greene's debt was assigned to Jefferson Capital for purposes of collection. (Compl. ¶17; Ans. ¶17). Ms. Greene alleges that at the time of assignment, the debt was in default. (Compl. ¶18). Also on November 29, 2019, Jefferson Capital mailed Ms. Greene "a collection letter seeking to collect $1,110.70 related to the defaulted First Premier Bank credit card account." (Compl. ¶19; Ans. ¶19). The Complaint alleges numerous flaws with that letter.

The Complaint alleges that the collection letter "deceptively presents itself as a time sensitive opportunity for Plaintiff to apply for and get accepted into Defendant's 'Rewards Program,'" but that Program "is nothing more than a cloaked offer to settle the outstanding debt for approximately 50% of the Amount of the debt." (Compl. ¶20). Further, the letter assured Ms. Greene that she would receive "a new credit card from Defendant's unidentified 'banking partner.'" (Compl. ¶22).

The letter states that, to obtain the settlement of the debt for fifty percent of the amount due, Ms. Greene was required to send Jefferson Capital a

---

"Greene Decl." = Declaration of Plaintiff Eileen Greene in Opposition to Defendant's Motion to Compel Arbitration (DE 21-1)

"Brick Decl." = Declaration of Maria Brick, Operations Manger, Client Services for Jefferson Capital Systems, LLC (DE 16-1)

"Gilson Decl." = Declaration of Julie K. Gilson, Director of Business Communication for Premier Bankcard, LLC (DE 16-2)

[2]   That provision defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C.A. § 1692a(3).

"Participation Form." (Compl. ¶24; Ex. A at 17). The letter further provides that, in accepting to participate in the Payment Rewards Program, Ms. Green must

> also agree that Jefferson Capital may communicate with [her] (for any lawful reason relating to [her] account, including debt collection) by electronic mean using any electronic mail address or wireless cellular telephone number that [she] provide[s] to Jefferson Capital (including ported landline numbers) and/or by automatic dialing and announcing devices which may play recorded messages. [She] further agree[s] that no such electronic communications will be deemed unsolicited.

(Compl. ¶ 24; Ex. A at 17). The Complaint alleges that by agreeing to those terms, "the least sophisticated consumer has unwittingly agreed to waive its rights not to receive robo and other calls which are prohibited under the Telephone Consumer Protection Act." (Compl. ¶25).

The Complaint also alleges that the collection letter "falsely states or implies that the respective settlement offer is valid only if Plaintiff responds before January 3, 2019." (Compl. ¶27; Ex. A at 17 ("LetterExpires 01/03/2019")). Upon information and belief, the Complaint alleges that Jefferson Capital had the authority to settle Ms. Greene's debt at any time. (Compl. ¶28). Further, the Complaint alleges that the letter created a "false sense of urgency" for Ms. Greene to respond. (Compl. ¶¶29, 31).

According to the Complaint, the collection letter also falsely implies that the completion of the Payment Rewards Program will result in the consumer being eligible to receive a new credit card. (Compl. ¶32). However, the letter "fails to state the name of the 'bank partner' or the bank issuing the credit card." (Compl. ¶33). And, the "summary of Credit Terms" located on the back side of the letter falsely implies that Jefferson Capital "is the actual bank issuing the credit card by its repeated use of the term, 'we.'" (Compl. ¶¶35-40). Additionally, upon information and belief, the Complaint alleges that Jefferson Capital "does not have the authority to approve the application for the new credit card." (Compl. ¶41). Instead, the issuing bank would make the final

decision and can accept or reject an application, even if the consumer has completed the Payment Rewards Program." (*Id.*).

The Complaint also alleges that the collection letter's "Program Satisfaction Guarantee "is contradictory, confusing and deceptive" because "it purports to allow the consumer to request a refund of any payments made after the first payment is made," but "the last sentence of the guarantee paragraph states the guarantee is valid for 30 days after competition of making all the payment." (Compl. ¶34). And, the Complaint alleges that the letter's "safe harbor" language is "at the very bottom of the over-sized letter in a font that is smaller than almost the rest of the letter," and "is not included in the body of the letter, but rather is incorporated in to the 'Participation Form.'" (Compl. ¶30).

The Complaint alleges that Jefferson Capital's communications in the letter "were designed to cause Plaintiff to suffer a harmful disadvantage in charting a course of action in response to Defendant's collection efforts." (Compl. ¶49) Specifically, the letter "provided confusing, incomplete and/or incorrect information" and "caused Plaintiff a concrete injury in that Plaintiff was deprived of her right to receive accurate and trustworthy information regarding her rights under the FDCPA." (Compl. ¶50) According to the Complaint, the "failure . . . to provide correct information impeded Plaintiff's ability to make a well-reasoned decision" and frustrated her "ability to intelligently choose" her response. (Compl. ¶¶55-57).

The Complaint asserts a one-count claim under the FDCPA. (Compl. ¶¶59-65). It alleges that Jefferson Capital violated the act "in connection with its communications set to Plaintiff" by:

(1) "using false, deceptive or misleading representations or means in connection with an attempt to collect a debt from Plaintiff";
(2) "threatening to take any action that cannot legally be taken or that is not intended to be taken";
(3) "using false representations or deceptive means to collect or attempt to collect a debt from Plaintiff";

> (4) "using unfair or unconscionable means to collect or attempt to collect a debt"; and
>
> (5) "by engaging in collection activity which overshadows or is inconsistent with the consumer's right to dispute the debt."

(*Id.*).

Ms. Greene brings this action on behalf of herself "and all New Jersey consumers and their successors in interest ('the Class'), who have received debt collection letters and/or notices from the Defendant which are in violation of the FDCPA," as described by the Complaint. (Compl. ¶10).

Following the Complaint, Jefferson Capital filed its Answer (DE 3). The parties then engaged in limited discovery concerning the arbitrability of the present action. (DE 15-1 at 8; DE 21 at 7). Thereafter, Jefferson Capital filed its motion (DE 15) to compel arbitration, which is now before the Court.

### b. Jefferson Capital's Alleged Entitlement to Arbitration

Jefferson Capital submits that, in February 2013 when Ms. Greene applied for and received the FPB account and associated credit card, Ms. Greene received the "Credit Card Contract and Account Opening Disclosures" ("the Original Cardholder Agreement"). (SUMF ¶¶2-3). The Original Cardholder Agreement contains an agreement to arbitrate "the Arbitration Provision") which provides:

### ARBITRATION AND LITIGATION

> This Arbitration Provision facilitates the prompt and efficient resolution of any disputes that may arise between you and us. . . . You have the right to opt out of this Provision, which means you would retain your right to litigate your disputes in a court, either before a judge or jury. *To exercise your right to opt out you must provide us with written notice no later than 30 days after your Credit Account is first opened.* If we do not receive your written notice within that time frame, your rights to opt out will terminate, and you agree that the provisions of this section will apply.
>
> **PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ALL DISPUTES ARISING OUT OF OR CONNECTED TO THIS CONTRACT SHALL BE RESOLVED BY BINDING ARBITRATION**. . . . ENTERING INTO THIS AGREEMENT

> CONSTITUTES A WAIVER OF YOUR RIGHT TO LITIGATE CLAIMS AND ALL OPPORTUNITY TO BE HEARD BY A JUDGE OR JURY.
>
> **Parties and Matters Subject to Arbitration**: *For purposes of this Provision, "you" and "us" include* the employees, parents, subsidiaries, affiliates, *beneficiaries, agents* and assigns *of you and us. For purposes of this Provision, "Claim" means any claim, dispute or controversy by either you or us, arising out of or relating in any way to this Contract, . . . your Credit Account,* any transaction on your Credit Account and our relationship. . . . *"Claim" shall refer to claims of every kind and nature,* including, but not limited to, initial claims, counterclaims, cross-claims and third party claims. *All Claims are subject to arbitration, regardless of legal theory and remedy sought, including, but not limited to, claims based in* contract, tort (including negligence, intentional tort, fraud and fraud in the inducement), agency, *statutory law* (federal and state), administrative regulations or any other source of law (including equity).
>
> **Agreement to Arbitrate**: Any Claim arising out of or relating to this Contract, or the breach of this Contract or your Credit Account, shall be resolved and settled exclusively and finally by binding arbitration, in accordance with this Provision. . . .[3]

(SUMF ¶6). Jefferson Capital contends that "[t]here is no doubt Green received the February 6, 2013 mailing, because she subsequently used the enclosed credit card to make numerous purchases." (SUMF ¶12; Gilson Decl. ¶9). Upon receipt, Ms. Green "did not notify FPB, in writing and within 30 days of opening the Account, that she was electing to opt out of the Arbitration Provision." (SUMF ¶13; Gilson Decl. ¶8). Then, on May 6, 2014, FPB mailed Ms. Green an Amended Cardholder Agreement, which contains the identical Arbitration Provision as the Original Cardholder Agreement. (SUMF ¶¶14-15; Gilson Decl. ¶10; *Compare* Original Cardholder Agreement (DE 16-2 at 6-7) *with* Amended Cardholder Agreement (DE 16-1 at 9-1)). That May 6, 2014 mailing was not returned as undeliverable. (SUMF ¶16; Gilson Decl. ¶11). And, after receiving

---

[3] Jefferson Capital does not include the next sentence: "Binding arbitration shall not be required, however, for collection actions by us relating to your Credit Account." (DE 16-1 at 6, 9). Plaintiff, however, finds that language significant. *See* Section II.b.2(a), *infra*.

the Amended Cardholder Agreement, Ms. Greene used her FPB credit card and "did not notify FPB she was opting out of the Arbitration Provision, in writing, within 30 days, or otherwise." (SUMF ¶¶17-18; Gilson Decl. ¶¶11-12).

Jefferson Capital contends that its subsequent efforts to collect Ms. Greene's debt on behalf of FPB are governed by the Collection Services Agreement ("the Collection Agreement") between itself and Premiere Bank Card, LLC ("PBC"), the FPB affiliate responsible for collecting FPB's unpaid accounts. (SUMF ¶21; Brick Decl. ¶3). That Agreement states that FPB "is an express intended third-party beneficiary" thereof. (SUMF ¶22). Further, the Collection Agreement grants Jefferson Capital "a non-exclusive license to use the name of PBC in connection with the collections on each Account"; tasks Jefferson Capital with "collection using methods and procedures in [its] judgment, discretion, and experience"; authorizes Jefferson Capital "to settle FPB accounts 'if [it] believes the full amount of the Account cannot be collected' and bind FPB to the terms of such settlements"; and requires Jefferson Capital "to follow broad and detailed rules set forth by FPB in collecting [its] accounts." (SUMF ¶¶23-26).

Based on the credit agreements between FPB and Ms. Green, and the Collection Agreement between Jefferson Capital and FPB, Jefferson Capital submits that it is entitled to arbitration of Ms. Greene's claims. (DE 15-1 at 4).

In her Declaration, Ms. Greene states that she does not recall receiving the Original or Amended Cardholder Agreements – which she reviewed in the course of discovery – in conjunction with her credit card. (Greene Decl. ¶¶4-5). Further, Ms. Greene submits that she "was not aware that the terms of the credit card includ[ed] a binding arbitration clause." (Greene Decl. ¶6).

I note upfront that Ms. Greene did not file a response to Jefferson Capital's Statement of Uncontroverted Material Facts. As explain in more detail below, Section III(a), "[a] motion to compel arbitration is evaluated under the summary judgment standards." *Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 414 (D.N.J. 2018), *aff'd*, 959 F.3d 590 (3d Cir. 2020). Local Civil Rule 56.1(a) provides, *inter alia*:

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed. The opponent of summary judgment *shall* furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; *any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.*

L. Civ. R. 56(a) (emphasis added); *see also Tantillo v. CitiFinancial Retail Servs. Inc.*, 2013 WL 622147, *2 (D.N.J. Feb. 19, 2013) (applying Local Rule 56.1 to the defendant's motion to compel arbitration). That Rule "puts the onus on the parties, rather than the Court, to find evidence of record supporting their respective arguments." *McCann v. Unum Provident*, 921 F. Supp. 2d 353, 358 (D.N.J. 2013), *aff'd*, 907 F.3d 130 (3d Cir. 2018). And, given the "vital purpose" that a movant's statement of fact and the related response serve in "assist[ing] the Court in identifying whether material facts are truly in dispute," litigants ignore Local Rule 56(a) "at their peril." *Id.* Failure to respond to a movant's statement of material facts in accordance with the rules renders such statements of fact as undisputed. *See Tantillo*, 2013 WL 622147 at *3 (holding that non-movant's repeated failure to reference the record, in accordance with Local Rule 56(a), "demonstrates that there is no reasons to disbelieve the statements of fact.").

Because Ms. Greene did not respond to Jefferson Capital's statement of facts in accordance with Local Rule 56(a), I will consider Jefferson Capital's statements undisputed. *See id.* A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). I therefore review the record to determine whether it presents a genuine, material dispute of fact.

8

## II. Discussion

### a. Legal standard

Because arbitration is a "matter of contract" between two parties, "a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *Id.*

In *Guidotti v. Legal Helpers Debt Resolution*, the Third Circuit stated the approach a court must take on a motion to compel arbitration. Where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or … documents relied upon in the complaint), . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74. "In many cases, however, a more deliberate pace is required, in light of both the FAA's insistence that private agreements be honored and the judicial responsibility to interpret the parties' agreement, if any, to arbitrate." *Id.* Thus, where the complaint and supporting documents are unclear as to an agreement to arbitrate or where a plaintiff responds to a motion to compel with additional facts sufficient to place the issue of arbitrability "in issue," then the parties should be entitled to discovery. After limited discovery, a court may then "entertain a renewed motion to compel arbitration" and should review such a motion under the summary judgment standard.

Here, the parties engaged in limited discovery prior to the filing of this motion to compel arbitration. Therefore, the summary judgment standard applies.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

*See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322-23. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

> In light of that standard,
>
> arbitration will be compelled if the arbitrability issue presents no genuine, material issues of fact, with "[t]he party opposing arbitration . . . given the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009)). If, on the other hand, there are material factual disputes regarding arbitrability, the court should proceed to trial "regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." Id. (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011) ).

*Bacon*, 357 F. Supp. 3d at414 (D.N.J. 2018) (alteration in original.

10

### b. Compelling Arbitration

To determine whether the parties agreed to arbitrate, a court will turn to "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotation marks omitted) (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Before compelling arbitration pursuant to the FAA, "a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Id.*

The FAA reflects a strong federal policy in favor of arbitration. *Id.* (citing *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir.2003)). However, the presumption in favor of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* (internal quotation marks omitted) (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.2002)).

#### i. *Validity of the Agreement to Arbitrate*

The Original and Amended Cardholder Agreements (hereinafter "the Cardholder Agreements") are subject to South Dakota law and the FAA. (SUMF ¶5; DE 16-2 at 6,9). Under South Dakota law, "[a] contract is formed when all essential elements are met: (1) the parties are capable of contracting; (2) they consent to the subject of the contract; (3) the object of the contract is lawful; and (4) there was sufficient cause or consideration. *Mueller v. Cedar Shore Resort, Inc.*, 643 N.W.2d 56, 70 (S.D. 2002). Ms. Greene does not dispute that the relevant parties were capable of contracting, or that the establishment of a credit account is a lawful object. (*See generally* DE 21). Nor does she discuss consideration. (*Id.*) Instead, Ms. Green submits that Jefferson Capital has not established that she received the Cardholder Agreements and consented to the arbitration provision. (DE 21 at 10-14).

Jefferson Capital relies on the Gilson Declaration as evidence that Ms. Greene received the Cardholder Agreements via mail, that Ms. Greene subsequently used the credit card she received, and that she failed to object to

11

the arbitration agreement within the appropriate time. (SUMF ¶¶ 3, 11, 12, 13, 14, 16, 17, 18). Ms. Green submits that "the Gilson Declaration is insufficient to establish a binding and enforceable cardholder agreement and the arbitration provision therein" because it "lacks the requisite indicia of reliability." (DE 21 at 11). First, Gilson is an employee of PBC and not of FPB, who Gilson states mailed Ms. Green the agreement. (*Id.*) Therefore, Ms. Greene contends Gilson lacks personal knowledge. (*Id.*) Second, Ms. Green asserts that Gilson testified that FPB itself mailed the Cardholder Agreements but, in other cases not involving Ms. Greene, Gilson testified that FPB directed its letter vendor to mail its credit agreements. (*Id.*) Ms. Greene contends that because the Gilson declaration cannot be used to establish that the Cardholder Agreements were mailed to her, Jefferson Capital cannot establish that she assented to their terms, including the arbitration provision. (DE 21 at 14).

    Ms. Greene's arguments fail for two reasons. First, under South Dakota law, the use of a credit card, or the expiration of thirty days from the issuance of a credit card agreement without written notice from the card holder to cancel the account, creates a binding contract between the card holder and the card issuer. S. D. Codified Laws § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder."); *George v. Rushmore Serv. Ctr., LLC*, No. 18-CV-13698, 2020 WL 2319293, at *1 (D.N.J. May 11, 2020) ("When a card agreement is provided with the card, the card user is bound to those terms.") (citing S. D. Codified Laws § 54-11-9); *Cayanan v. Citi Holdings, Inc.*, *928 F. Supp. 2d 1182*, 1199 (S.D. Cal. 2013) ("Under South Dakota law, because [the card holder] used both cards after receiving the cardmember agreements, she assented to the arbitration agreements."). Here, Ms. Greene does not dispute that she used her credit card or that she failed to provide

12

written notice of an objection to the Cardholder Agreements. Thus, under North Dakota law, Ms. Greene is bound by the terms of those Cardholder Agreements.

Second, Ms. Greene's contention that Gilson lacked sufficient knowledge to declare that FPB mailed Ms. Green the Cardholder Agreements is equally unavailing. For purposes of Federal Rule of Evidence 602, "personal knowledge of business records may be gained by review of such records by an appropriate person." *Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *17 (D.N.J. June 27, 2019), reconsideration denied, No. CV 14-1680, 2019 WL 5558304 (D.N.J. Oct. 28, 2019); *see also In re Sia*, 2015 WL 9462089, at *7, 2015 WL 9462089 (D.N.J. Dec. 28, 2015) ("The court did not abuse its discretion in holding that 'personal knowledge' may be gained through review of the relevant records relating to the case.") (citing *Serfess v. Equifax Credit Info. Servs., LLC*, 2015 WL 5123735, at *2 (D.N.J. Sept. 1, 2015) (denying motion to strike declaration of employee who attested to facts "based on [her] personal knowledge gained through [her] employment with Equifax and/or [her] review of Equifax's business records"); *Byrd v. Merrill Lynch*, 2011 WL 2680572, at *6 (D.N.J. July 8, 2011), *aff'd*, 479 F. App'x 444 (3d Cir. 2012) (permitting declaration of employee who was not personally present)); *Crumpler v. Midland Credit Mgmt., Inc.*, 2013 WL 6576318 (E.D. Pa. Dec. 13, 2013) (declining to strike declaration where declarant attested that he reviewed business records and noting that declarant did not need independently obtained knowledge of attested-to business practices).

Here, Gilson, the Director of Communications for PBC – an affiliate of FPB – attested to her "familiar[ity] with the business practices and business records of FPB and PBC," and stated that she "ha[s] access to, [is] familiar with, and [is] authorized to speak on behalf of FPB and PBC regarding their business practices and the records arising out of and relating to such practices." (*Id.*) Further, she stated that she reviewed the records, which "were made by a person with knowledge [and] have been kept in the course of a

13

regularly conduct business activity," relating to Ms. Greene's case. (Gilson Decl. ¶4). As personal knowledge may be based on a review of documents, that is all that is required at this stage.[4]

Based on the foregoing, I find that a valid agreement to arbitrate exists.

### ii. *Scope of the Agreement to Arbitrate*

As the Supreme Court of the United States has explained, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

(a) Exception for "collection actions by us"

Here, Ms. Greene contends that her FDCPA claim is exempt from arbitration under the plain language of the Cardholder Agreements. Ms. Greene points to the following language in those agreements:

> Any Claim arising out of or relating to this Contract, or the breach of this Contract or your Credit Account, shall be resolved and settled exclusively and finally by binding arbitration, in accordance with this Provision. **Binding arbitration shall not be required however, for collection actions by us relating to your Credit Account . . . .**

(DE 21 at 19 (adding emphasis) (quoting DE 16-2 at 6, 9)). Ms. Greene submits that while the phrase "collection actions" may "be understood to refer to a collection lawsuit," the phrase "could also be understood to refer to an 'action' taken in connection with 'collection." (*Id.*) Therefore, Ms. Greene submits that such a "collection action" includes Jefferson Capital's mailing of the debt collection letter at issue. (*Id.*)

Jefferson Capital, however, submits that the arbitration provision in the Cardholder Agreements is broad and covers "any claim, dispute, or

---

[4] I add that Ms. Greene obviously received the mailing, because she received and used the credit card contained therein.

controversy," "arising out of or relating in any way to" Ms. Greene's Account with FPB. (DE 24 at 15 (quoting SUMF ¶¶6, 15); DE 16-2 at 6,9). The Agreements define claim as "claims of every kind and nature" "regardless of legal theory," and including, *inter alia*, statutory law. (DE 24 at 15; DE 16-2 at 6,9). Here, Ms. Greene's claim arises under federal statutory law, the FDCPA, and arises from a letter Jefferson Capital mailed Ms. Greene on FPB's behalf. (DE 24 at 15). Based on those facts, Jefferson Capital submits Ms. Greene's claim is covered by the arbitration agreement. (*Id.*)

Further, Jefferson Capital contends that Ms. Greene misreads the "collection action" exception. (DE. 24 at 16). The Agreements except from arbitration "collection actions by *us* relating to your Credit Account." (DE 16-2 at 6,9). The Agreements define "us" as FPB and its "employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us." (*Id.*) Thus, the exception applies when FPB or any of those enumerated individuals or entities pursue a collection action against the cardholder, Ms. Greene.

This is not a "collection action by us," *i.e.*, by Jefferson Capital. It is an action brought by the card holder *against* Jefferson Capital, claiming that the wording of a collection letter violated federal law. The plain language of the exception establishes that it does not apply to matters relating to a lawsuit initiated by a card holder, even if generally related to the subject matter of payment or collection of an account. In light of the broad language of the collection agreement, and the presumption of arbitrability, I find that Ms. Greene's claim is within the scope of the arbitration provision at issue here. *See George v. Rushmore Serv. Ctr., LLC*, No. 18-CV-13698, 2020 WL 2319293, at *3 (D.N.J. May 11, 2020) (interpreting nearly identical language to the arbitration provision here, in a matter that also involved FPB, and finding that the debt collection at issue there unquestionably "relates to" the credit account).

### b. Unconscionability

Ms. Greene submits that, even if the arbitration provision applies to her claims, that provision is unconscionable. It is inequitable, she says, because FPB has the right to pursue a collection action against a cardholder in court, but the cardholder is foreclosed from bringing an action against FPB in court. (DE 21 at 27). In South Dakota, the courts focus on the existence of "overly harsh or one-sided terms" when deciding whether a contract is substantively unconscionable." *Schwalm v. TCF Nat'l Bank*, 226 F. Supp. 3d 937, 943 (D.S.D. 2016) (quoting *Johnson v. John Deere Co.*, 306 N.W.2d 231, 237 (S.D. 1981)). In *Schwalm*, the United States District Court for the District of South Dakota noted that "South Dakota has not directly dealt with the question of whether an arbitration clause that lacks mutuality is unconscionable." *Id.* There, the court upheld the validity of an arbitration clause that required both the employer and the employee to arbitrate claims against each other and, therefore, did not limit the plaintiff's "remedies" against the employer but "simply govern[ed] the forum in which she must first pursue her remedies." *Id.*

Relying on Supreme Court precedent, the Third Circuit held that strict mutuality was not required as long as the provision did not restrict a party's rights and remedies, but only dictated the forum in which they could be presented: "[Where] an arbitration provision requires only one side to submit its claims (personal injury or otherwise) to arbitration, but does not alter or limit the rights and remedies available to that party in the arbitral forum, it cannot be said that the parties' agreement is substantively unconscionable." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364, 49 V.I. 1133, 1146 (3d Cir. 2007) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1996) (rejecting the argument that compulsory arbitration of age discrimination claims was inconsistent with the Age Discrimination in Employment Act, noting that "the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum."); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (enforcing arbitration

16

agreement requiring plaintiff to arbitrate claims under Securities Act of 1933); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, (1987) (upholding agreements to arbitrate claims under Security Exchange Act of 1934 and the RICO statutes)). According to the Third Circuit, "*Gilmer* and other Supreme Court decisions in this area . . . are grounded on the premise that "arbitration clauses substitute one procedurally fair forum for another." *Edwards*, 497 F.3d at 364 (quoting David S. Schwartz, Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitration, 1997 Wisc. L. Rev. 33, 110 (1997)).

That precedent is highly persuasive here. I hold that the present arbitration agreement is not unconscionable on the basis of nonmutuality, because it does not limit Ms. Greene's remedies, but only prescribes the forum in which she can pursue her claims.

### iii. *Jefferson Capital's Ability to Enforce the Arbitration Agreement*

The arbitration provision here requires the cardholder to arbitrate any claim, "regardless of legal theory," against FPB and its "employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns." (DE 16-2 at 6,9). The defendant here is not FPB itself, but Jefferson Capital. Jefferson Capital submits that it is entitled to enforce the arbitration provision because it qualifies as FPB's "agent" for purposes of Ms. Greene's claim. (DE 15-1 at 11; DE 24 at 9).

Under South Dakota law, "[w]hether an agency relationship has in fact been created depends upon the relations of the parties as they exist under their agreement or acts." *A.P. & Sons Const. v. Johnson*, 657 N.W.2d 292, 297 (S.D. 2003) (internal quotation marks omitted) (quoting *Dahl v. Sittner*, 429 N.W. 2d 458, 462 (S.D. 1988)).

> There are two types of agency, actual and ostensible. Actual agency exists when a principal and agent expressly agree to enter into an agency relationship. Ostensible agency is created when a principal by his conduct or lack of ordinary care causes a third party to believe another is acting as his agent.

17

*Id.* (internal citations omitted).

In *George*, applying South Dakota law, a Court in this District recently found that Rushmore Services Center, LLC ("Rushmore") was an agent of PBC and was entitled to enforce an arbitration agreement substantially similar to the one at issue here.[5] 2020 WL 2319293, at *2. The Court found that Rushmore was an agent because: (1) "PBC and Rushmore entered an Agreement for Collection of Services"; (2) "Rushmore was 'contractually obligated to collect delinquent credit card accounts issued by First Premier Bank"; (3) that "contract required Rushmore to 'use diligence [and employ] such lawful means, methods, and procedures as in [Rushmore's] judgment, discretion, and experience' would be effective to collect on overdue accounts"; and (4) Rushmore "had 'authority to compromise [on] accounts . . . in an amount not less than seventy percent (70%)' the amount owed." *Id.* ([bracketed] alterations in original).

Here, the same factors are present: (1) Jefferson Capital and FPB entered into a Collection Services agreement; (2) that Agreement governs Jefferson Capital's "efforts to collect unpaid accounts owed to FPB"; (2) the agreement tasks Jefferson Capital with "undertak[ing] collection using methods and procedures in [Jefferson Capital's] judgment, discretion, and experience"; and (4) the Agreement authorizes Jefferson Capital to settle FPB's accounts. (SUMF ¶¶ 21-25).

Ms. Greene responds that Jefferson Capital is not an agent of FPB because the Collection Services Agreement labels those parties as independent contractors. (DE 15-1 at 11; DE 15-3 at 4). She relies on the following clause of that Agreement:

> Independent Contractor. It is agreed and understood between the parties that Agency is an independent contractor and Client will exercise no control over the actual method and procedure of Agency's operations. Neither party is an employee, agent or

---

[5] Ms. Greene concedes that the language in the arbitration provision in *George* is similar to the language in the arbitration provision before the court. (DE 21 at 16-17).

> representative of the other party. Neither party shall have any right, power, or authority to enter into any agreement for or on behalf of the other party, or to incur any obligation or liability for the other party. This Agreement does not create an[] association, joint venture, or partnership, nor impose any partnership liability, between the parties.

(DE 15-3 at 4).

This Agreement, for starters, is between Jefferson Capital and PBC; FPB is a named third party beneficiary. At any rate, an agency relationship, however, is not dictated solely by labels, and may be established by conduct. *A.P. & Sons Const.*, 657 N.W.2d at 297. I do not say that Jefferson Capital was the agent of FPB for every purpose or in every context. Jefferson Capital was, however, authorized and granted a wide array of powers to collect and settle unpaid accounts belonging to FPB. (*See* p. 7, supra.) I therefore find that Jefferson Capital was *acting* as the agent of FPB while attempting to collect Ms. Greene's unpaid accounts. *See George*, 2020 WL 2319293, at *2. Therefore, Jefferson Capital is entitled to enforce the arbitration provision in the Cardholder Agreements. [6]

### c. Stay Pending the Outcome of Arbitration

Ms. Greene requests that the Court stay the proceeding pending the outcome of the arbitration pursuant to Section 3 of the FAA. (DE 21 at 28) To implement the federal policy in favor of arbitration, Section 3 provides that issues within the scope of an arbitration agreement shall be referred to arbitration, and that trial must be stayed pending arbitration of those issues:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance

---

[6] Because I find that the plain language of the arbitration provision entitles Jefferson Capital to compel arbitration, I decline to analyze Jefferson Capital's alternative theories.

> with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3. Having found that Ms. Greene's claims are referable to arbitration under the Cardholder Agreements, I will grant her request for an administrative stay pending the outcome of arbitration. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 212 (3d Cir. 2007) ("Section 3's mandatory stay provision applies only where the claims at issue are 'referable to arbitration under an agreement in writing for such arbitration.'").

### III.   Conclusion

For the reasons set forth above, I will grant Jefferson Capital's motion (DE 15) to compel arbitration. All claims are referred to arbitration. The clerk will enter an administrative stay of proceedings pending the outcome of arbitration.

An appropriate order follows.

Dated: January 15, 2021

/s/ Kevin McNulty
_____
**Kevin McNulty
United States District Judge**